## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| BOY SCOUTS OF AMERICA and | : | Case No. 20-10343-LSS |
| DELAWARE BSA LLC, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____ | : | |
| THE COALITION OF ABUSED SCOUTS | : | |
| FOR JUSTICE, | : | |
| | : | Civ. No. 23-1443-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| OFFICE OF THE UNITED STATES TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

## **OPINION**

Rachel B. Mersky, Monzack Mersky and Browder, P.A., Wilmington, DE, attorney for appellant the Coalition of Abused Scouts for Justice.

Ramona D. Elliott, P. Matthew Sutko, Sumi Sakata, Department of Justice, Executive Office for United States Trustees, Washington, DC; Andrew R. Vara, Joseph J. McMahon, Jr., Timothy J. Fox, Jr., Robert J. Schneider, Jr., Department of Justice, Office of the United States Trustee, Wilmington, DE, attorneys for appellee the United States Trustee.

January 13, 2025

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is an appeal (D.I. 1) by the Coalition of Abused Scouts for Justice (the

"Coalition") with respect to the Bankruptcy Court's December 5, 2023 Order (Bankr. D.I. 11652)[1]

(the "Order") and accompanying Opinion, *In re Boy Scouts of America*, 2023 WL 8449557

(Bankr. D. Del. Dec. 5, 2023) ("Opinion"). The Coalition was formed and led by a group of

personal injury law firms that represent certain creditors with claims of sexual abuse against Boy

Scouts of America and Delaware BSA LLC (collectively, the "Debtors"). These personal injury

law firms retained bankruptcy professionals to assist them in the chapter 11 cases and later sought

to recover the bankruptcy professionals' fees and expenses in the amount of $21,007,881.01

pursuant to 11 U.S.C. §§ 363(b) and/or 503(b)(3)(D) and (4). The Bankruptcy Court denied the

Coalition's motion, determining that the Coalition may not receive payment under section 363(b)

and that it failed to meet its burden to obtain fees as an administrative expense under section

503(b)(3)(D) and (4). The Coalition filed a timely appeal. (D.I. 1.) The merits of the appeal are

fully briefed. (D.I. 10, 13, 15.) No party requested oral argument. For the reasons set forth

below, the Order is affirmed.

I.      BACKGROUND

        A.      The Parties and the Chapter 11 Cases

        The Debtors filed chapter 11 bankruptcy petitions on February 18, 2020. The Debtors are

non-profit corporations that provide youth programs run by adult volunteers. Their bankruptcies

were precipitated by the filing of numerous lawsuits alleging sexual abuse of scouts by adult

---

[1] The docket of the chapter 11 cases, captioned *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 11) filed in support of the Coalition's opening brief is cited herein as "A__," and the supplemental appendix (D.I. 14) filed in support of the United States Trustee's answering brief is cited herein as "SA__."

volunteers. The Debtors' goal in their chapter 11 reorganization was to achieve a global settlement of the sexual abuse claims while maintaining their mission.

Following the chapter 11 filing, the United States Trustee appointed two official committees of unsecured creditors under section 1102(a)(1) of the Bankruptcy Code. One was to represent all trade creditors. It is irrelevant to this appeal. The other was to represent all sexual abuse tort claimants (the "Official Tort Committee" or "TCC"). (B.D.I. 141 & 142.) The TCC, with Bankruptcy Court approval, employed professionals under section 1103(a) of the Bankruptcy Code. The Bankruptcy Court also entered an order appointing a legal representative for future sexual abuse tort claimants (the "Future Claims Representative"). (B.D.I. 486.)

Notwithstanding the TCC's existence as an official committee that was acting as a fiduciary for all sexual abuse tort claimants, the Coalition—which represents tens of thousands of sexual abuse victims—was formed in July 2020 by those victims' tort lawyers (the "State Court Counsel"). The Coalition began participating in the Debtors' cases and retained various professionals of its own, including a financial advisor (Province) and five law firms: (i) Brown Rudnick ; (ii) Parsons Farnell; (iii) Monzack Mersky; (iv) Robbins, Russell; and (v) Akin Gump. (A124, ¶ 15.) The private employment agreements with the Coalition's bankruptcy lawyers provided that State Court Counsel would direct their actions in the Debtors' cases and pay them for their services. (B.D.I. 10808-4, pages 34-35 of 1292 (Brown Rudnick); *id.*, page 738 of 1292 (Province); *id.*, pages 855-57 of 1292 (Parsons Farnell); *id.*, pages 1117-19 of 1292 (Monzack Mersky); *id.*, pages 1146-48 of 1292 (Robbins, Russel); *id.*, pages 1232-33 of 1292 (Akin Gump).)

Federal Rule of Bankruptcy Procedure 2019(b) requires ad hoc groups such as the Coalition to file a verified statement. The Coalition amended its verified statement to represent: "**Coalition Counsel** [i.e., the retained law firms] **are being paid by State Court Counsel. Coalition Members** [i.e., the State Court Counsels' personal injury clients] **will not, in any way,**

3

**be responsible for the fees of Coalition Counsel.**" (B.D.I. 1429, ¶ 11 (bolded in the original);

*see also* A693.)  The same amended verified statement attached a form letter that State Court

Counsel sent to their personal injury clients requiring their written acknowledgment that the client

would become a member of the Coalition.  (B.D.I. 1429, Ex. A-4, page 94 of 96; *see also* A693.)

That form acknowledgment provided that "a portion of the fees and expenses incurred by" the

Coalition's bankruptcy counsel "will be paid by [FIRM] and any payment of such fees and

expenses by [FIRM] will not increase the fees and expenses owed by me under the terms and

conditions of my Employment Agreement or Retainer Agreement with [FIRM]."  (B.D.I. 1429,

Ex. A-4, page 94 of 96).

Only in a supplement to its amended verified statement, filed in response to concerns

raised by the United States Trustee, did the Coalition acknowledge that it reserved the right to seek

a "substantial contribution" claim and seek payment of its bankruptcy counsel's fees and expenses

under a chapter 11 plan.  (A002, ¶ 2.)  This was despite representing that neither it nor State Court

Counsel would "charge back the fees of any of the Coalition's professionals to the individual

survivors in any way, including by reducing an individual survivor's claim distribution."  (*Id.*)

**B.    Denial of the Debtors' Request to Provide for Payment of the Coalition's Professionals Through a Restructuring Support Agreement**

Approximately a year and a half after filing their bankruptcy petitions, on July 1, 2021, the

Debtors filed a motion ("RSA Motion") seeking authority to enter into a restructuring support

agreement ("RSA") with, among others, the Official Tort Committee, the Future Claims

Representative, and the Coalition.  (A005.)  In return, the Coalition agreed to support the Debtors'

proposed plan of reorganization.  (A009, ¶ 10.)  Through the RSA, the Debtors proposed to pay

the Coalition's professionals' fees under section 363(b), which allows a court to authorize the use

of a debtor's bankruptcy estate's funds "other than in the ordinary course of business."  (A007, ¶

3; A008, ¶ 8; A012; A017–A018, ¶ 14; A025–A027, ¶¶ 27-32.)  The RSA proposed that the Debtors would pay the Coalition's professionals as much as $950,000 every month until the effective date of the Debtors' plan.  It further proposed that on the plan's effective date, the Debtors would reimburse the State Court Counsel for fees paid or owed to the Coalition's professionals up to a $10.5 million cap, with any additional fees paid or owed to be paid by the settlement trust established through the plan to benefit sexual abuse victims.  (A012; A017–A018, ¶ 14; SA14.)

        At a hearing on August 12, 2021, the Coalition's counsel acknowledged that it and its fellow firms had not provided any invoices to the Debtors in negotiating the RSA.  (SA195, Tr. 77:7-9.5.)  The Bankruptcy Court thus concluded that "the debtors got no information from the coalition with respect to fees and negotiated a number in the absence of any knowledge of that." (SA196, Tr. 78:14-16.)  Later that day, at the evidentiary hearing on the RSA Motion, the Debtors' witnesses admitted they neither requested nor received any documentation regarding the Coalition's professionals' fees and had no way to determine whether any amounts the Debtors agreed to pay would be for services rendered "to advance [the Coalition's] own special interests as opposed to . . . the interest of all claimants."  (SA291–SA292, Tr. 173:25–174:5.)

        In an August 19, 2021 bench decision (A295-A325), the Bankruptcy Court concluded that the Debtors met their burden of proof as to their RSA Motion under section 363(b), with two exceptions—one of which was the proposed payment of the Coalition's professionals' fees. (A302, Tr. 8:7; A312, Tr. 18:9-10; A313–A315, Tr. 19:2–21:22; A322, Tr. 28:8-12.)  The Bankruptcy Court found it could not determine "at [that] point in time" (A314, Tr. 20:3) whether such payment would be permissible because:

> (i) there was some question whether the Coalition's services were duplicative of those being rendered by the Official Tort Committee;

(ii) the Coalition's Rule 2019 pleading stated that its professionals' fees were being paid by the State Court Counsel rather than the abuse victims they represented, so "any funds diverted from abuse victims [through payment by the Debtors or the trust to be established under the proposed plan], especially to pay an obligation of their lawyers, needs to be closely examined";

(iii) the State Court Counsel's clients' anticipated support for the plan, upon which payment of the Coalition's professionals' fees and expenses was premised, "ha[d] yet to occur";

(iv) "the RSA provide[d] the [C]oalition with numerous termination rights, many of which are subjective"; and

(v) "there was no evidence [presented] on the role [] the [C]oalition played in the mediation and in the RSA."

As a result, the Bankruptcy Court determined "In the circumstances of this case, . . . it is necessary to see the outcome of the Coalition's efforts" before determining whether its professionals' fees and expenses could be paid from funds of the Debtors' bankruptcy estates. (A314–A315). The Bankruptcy Court concluded that "[t]he parties can proceed with the RSA without the [requested] findings regarding . . . [guaranteed] fees for the [C]oalition, or not." (A322, Tr. 28:10-12.) The Bankruptcy Court left it to "the RSA parties [to] determine [whether] they want to proceed under these circumstances" and directed the parties to consult with the United States Trustee regarding his concerns "and ask chambers to set up a further hearing to discuss the order, if necessary, if the RSA parties determine to go forward, notwithstanding [the Bankruptcy Court's] ruling." (A322–A323, Tr. 28:14–29:2.) No party ever submitted a revised order containing the changes directed by the Bankruptcy Court, and no order was entered authorizing the Debtors to enter the RSA.

**C.    Denial of the Debtors' Request to Provide for Payment of the Coalition's Professionals' Fees Through the Plan of Reorganization**

The Debtors filed a plan of reorganization with their petitions and thereafter filed several amendments. The fourth amended plan, filed July 2, 2021, incorporated the RSA's terms, including the terms regarding the priority payment of the Coalition's professionals. (*See* B.D.I.

6

5484 § V.T.)  Following the decision on August 19, 2021, declining to approve payment of the

Coalition's professionals under the RSA, the Debtors, on September 15, 2021, filed a fifth

amended plan, which provided that they would pay the Coalition's professionals' fees on the

plan's effective date "or as soon as reasonably practicable." (B.D.I. 6212, § V.T.)  The proposed

payments remained as described in the RSA—up to $950,000 monthly and $10.5 million on the

effective date.  (*Id.*)  At a hearing on the adequacy of the Debtors' proposed disclosure statement

for the fifth amended plan, the Bankruptcy Court stated that it was "not going to approve [payment

of the Coalition's professionals' fees] as part of the plan." (A381, Tr. 104:20-21.)  The

Bankruptcy Court directed any fee request to be brought by "an appropriate motion unrelated to

the plan." (A381, Tr. 104:9-11.)

The Debtors thereafter filed a modified fifth amended plan, which provided that the

Coalition's professionals' fees could be capped at $21 million and made their payment "subject to

the Bankruptcy Court granting a motion filed pursuant to sections 363(b), 1129(a)(4) and 503(b)

of the Bankruptcy Code, Bankruptcy Rule 9019, or otherwise applicable bankruptcy and non-

bankruptcy law[.]" (B.D.I. 6429, § V.T.)  Subsequent modifications did not alter the Coalition fee

provision, and on September 8, 2022, the Bankruptcy Court entered an order confirming the third

modified fifth amended plan.  (B.D.I. 10316 at 16.)  The Coalition did not appeal the confirmation

order.

Although the Bankruptcy Court's opinion supporting the confirmation order stated,

"Debtors' agreement with respect to the Coalition's fees will be brought separately," *In re Boy

Scouts of Am.*, 642 B.R. 504, 678 n.763 (Bankr. D. Del. 2022), the Debtors never filed a separate

motion requesting that their bankruptcy estates be authorized to pay the Coalition's professionals'

fees.

**D.    The Coalition's Motion for Payment of its Bankruptcy Professionals' Fees**

On December 29, 2022, the Coalition filed a motion "for Entry of an Order Approving the Debtors' Proposed Payment of the Coalition Restructuring Expenses" (the "Motion"). (A119–A162.)  Despite the pleading's title, the Motion was the Coalition's request; it included no supporting document produced by the Debtors, and the Debtors did not submit any pleadings or present any argument in support of the Motion after it was filed.

In the Motion, the Coalition sought payment of $21 million in fees and expenses billed by its professionals. (A147, ¶ 95 & n.18.)  The Coalition argued that the professionals' fees should be paid from the Debtors' bankruptcy estates as an administrative expense either (i) under section 363(b), as a sound exercise of the Debtors' business judgment (notwithstanding the fact that the Motion was neither filed nor supported by the Debtors), or, in the alternative, (ii) as a substantial contribution award under section 503(b)(3)(D) and (4).[2]  (A147–A161, ¶¶ 96-143.)

The United States Trustee objected (A467–A497), arguing that section 363(b) did not apply as the Debtors did not file or support the Motion, and the Coalition did not "have the ability to exercise the Debtors' powers under Section 363." (A85, ¶ 40).  With respect to section 503(b), the United States Trustee argued that the Coalition had not met its burden under Third Circuit precedent to show that it did not merely act in its own interest and that its services were not duplicative of actions taken by other parties. (A489–A495, ¶¶ 50-61.)  The United States Trustee subsequently reached a resolution with the Coalition whereby he agreed to no longer object to the

---

[2] The Coalition also referred to § 1129(a)(4) as one source of authority for its request (*see* A119–A120), but neither the Motion nor the Coalition's opening brief in this appeal presented any arguments regarding section 1129(a)(4)'s applicability.  As a result, the Coalition has forfeited any argument it may have had regarding section 1129(a)(4). *See, e.g., Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 253 (3d Cir. 2000) (holding that arguments not made before the bankruptcy court are not preserved for appeal); *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (holding that appellant who fails to present argument regarding an issue in its opening brief "has abandoned and waived that issue on appeal").

relief sought in the Motion if it was predicated on section 503(b), but "reserve[d] all rights to dispute approval of fees and expenses under" section 363(b). (SA367–SA375.)

At the hearing on the Motion, the Coalition admitted into evidence the declarations it filed in support of the Motion and in response to the United States Trustee's objection but presented no additional evidence. (A610–A611, Tr. 13:2–14:25.) The Bankruptcy Court heard argument and expressed skepticism about the Coalition's professionals' request for fees and identified several concerns. (A613–A653.) The Bankruptcy Court's concerns foreshadowed what it later held in its Opinion and Order denying the Motion.

E.    **The Opinion and Order**

On December 5, 2023, the Bankruptcy Court issued the Order and accompanying Opinion denying the Motion.

With respect to the Coalition's request to approve its bankruptcy professionals' fees pursuant to section 363, the Bankruptcy Court held that, as "the Motion [wa]s brought by the Coalition, not [the] Debtors . . . the proper procedural mechanism is [section] 503," not section 363. *In re Boy Scouts of Am.*, 2023 WL 8449557, at *4.[3]  The Bankruptcy Court declined the Coalition's request that it consider the Debtors' previous requests for permission to pay the Coalition's professionals' fees because (i) it had already "declined to approve the RSA as submitted," due, in part, to the request to pay the Coalition's fees, and no party ever submitted a revised order to approve the RSA; and (ii) the confirmed plan's provision regarding the Coalition's fees required an appropriate motion to be filed, yet "[the] Debtors did not file the

---

[3] At argument on the Motion, the Bankruptcy Court had noted that the Debtors did not support the Motion and did not argue on the Coalition's behalf at the hearing—which it found relevant because the section 363 analysis must 'focus[] on the debtor because [the section] 363 standard is the debtor's business judgment, not anybody else's business judgment." (A617-A618, Tr. 20:15-21:18.)

Motion." *Id.* Accordingly, the Bankruptcy Court held that section 363(b) was not procedurally proper. Even if section 363(b) did apply, the Opinion noted, it required the Bankruptcy Court "to determine whether the debtor is properly exercising its business judgment and to bring the court's independent judgment to bear on that issue." *Id.* at \*5. "The Coalition," however, "has not met its burden to prove . . . that Debtors' previous decisions to pay the [Coalition's professionals' fees] were a proper exercise of Debtors' business judgment." *Id.* at \*11.[4]

With respect to the Coalition's request for payment under section 503(b), the Bankruptcy Court looked to the Third Circuit's *Lebron* decision for the relevant standard. *Id.* at \*8 n.38 (citing *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994)). The Bankruptcy Court found that, notwithstanding the Coalition's "major and constructive role in the case," many of its professionals' services "supplemented or overlapped with services provided by the Debtors' professionals or duplicated services provided by the TCC's professionals." *Id.* at \*8.[5] It further found that the Coalition had not shown that its contribution "transcend[ed] its self-interest." *Id.* at \*9-10. The Bankruptcy Court further found that, by its own admission, the Coalition "fail[ed] to review the Verified Fee Statements [filed in support of the Motion] to assess which services were beneficial to the estate[s] or were at least reasonable"—a failure that "dooms [the Coalition's] request." *Id.* at \*8.[6] As a result, the Bankruptcy Court held, "The Coalition ha[d] not met its

---

[4] At argument on the Motion, the Bankruptcy Court had noted that "normally when you're looking at a debtor and [its exercise of] business judgment, I get evidence about what the board approved, or what they considered, or what they didn't consider, and who they sought advice from, et cetera. And I don't see any of that in the record that I have." (A617, Tr. 20:17-21.)

[5] At argument on the Motion, the Bankruptcy Court questioned whether the Coalition's fees should be paid from the Debtors' bankruptcy estates at all, given that the Official Tort Committee was "an official committee[] that is charged and has the fiduciary obligation to the entire survivor constituency." (A635-A636, Tr. 38:23-39:1.)

[6] The Coalition has filed about 1290 pages of billing records in connection with the Motion. (D.I. 10808-4). At argument on the Motion, the Bankruptcy Court had inquired whether

burden to prove that it provided a substantial contribution to the estate[s]," and had not shown that its professionals' fees "should be paid by anyone other than" State Court Counsel. *Id.* at *11.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  The Order denying the Coalition's motion for fees under sections 363 and 503 is a final order. *See In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990) (holding an order is final and immediately appealable if it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination"); *cf. In re Energy Future Holdings Corp.*, 648 F. App'x 277, 280 n.4 (3d Cir. 2016) (acknowledging this Court's appellate jurisdiction over bankruptcy court's order approving § 363(b) motion); *Lebron*, 27 F.3d 937 (reviewing order denying administrative expense request under §§ 503(b)(3)(D) and (b)(4) without addressing finality).

This Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998).

Under the "fairly stringent" clearly erroneous standard, "an appellate court [] accept[s] the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v.*

---

the Coalitions' professionals had culled out services that were "really for the benefit of [their] individual client and not for the entire estate." (A643, Tr. 46:5-15.)  The Coalition's counsel from Brown Rudnick responded that the firm "did include the entirety" of fees billed during the Debtors' bankruptcies, and "did not c[u]ll back out" any services that were not rendered on behalf of the Debtors' bankruptcy estates. (A643–A645, Tr. 46:22–48:1.)  Instead, they decided to "first find out if there's any point to doing that because if the Court, obviously, is going to deny then we are not in a position where you would, I think, undertake that analysis." (A645, Tr. 48:9-12.)

11

*Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotation marks omitted). "If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. This includes findings based on witness testimony and those based on "documentary evidence or inferences from other facts." *Id.*

Decisions left to a court's discretion are reviewed "for abuse thereof." *In re Trans World*, 145 F.3d at 131. A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted). "Under the deferential abuse of discretion standard," a decision will be reversed "only where [it] is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the [] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotation marks omitted).

## III.    ANALYSIS

### A.    The Bankruptcy Court Did Not Err in Denying Coalition's Request to Have its Professional Fees Paid from the Debtors' Estates Under Section 363(b)

In a chapter 11 bankruptcy case, a trustee may request court authorization, after notice and a hearing, to use property of the estate "other than in the ordinary course of business." 11 U.S.C. § 363(b). If a trustee is not appointed under § 1104, the debtor serves as a "debtor in possession" with many of the powers granted to a trustee. 11 U.S.C. §§ 1101(1), 1107 & 1108. These include the authority to seek relief under section 363. 11 U.S.C. §§ 363(b) & 1107(a). Whether a party has authority to invoke section 363(b) is an issue of law reviewed *de novo*. Decisions to approve

or deny payment under section 363(b) are reviewed for abuse of discretion. *See In re Culp*, 545 B.R. 827, 844 (D. Del. 2016) (bankruptcy court has "considerable discretion" under section 363(b)), *aff'd*, 681 F. App'x 140 (3d Cir. 2017).

The Coalition's arguments concerning section 363 fail. First, an ad hoc committee such as the Coalition is not statutorily-authorized to file a section 363 motion. Second, the Coalition cannot challenge the Bankruptcy Court's denials of the Debtors' earlier attempts to seek approval to pay the fees because the Confirmation Order was a final order and the Coalition did not appeal from that order. Third, the Bankruptcy Court was not clearly erroneous to conclude that the Coalition did not prove that the Debtors exercised business judgment in seeking to pay the Coalition's fees.

> **1.     The Coalition, Which Is Neither a Trustee Nor a Debtor in Possession, Lacked Authority to Seek Relief Under Section 363**

The Coalition challenges the Bankruptcy Court's statement that "while debtors can use § 363 as a vehicle to bring a request to pay an ad hoc committee's fees, the standard to apply in reviewing the request is the § 503 substantial contribution standard." (*See* D.I. 10 at 44-45 (quoting *In re Boy Scouts of Am.*, 2023 WL 8449557 at *4).) Two things about that statement. First, it did not describe the standard that the Bankruptcy Court used to evaluate the Motion in relation to section 363(b). It was a description of what the Court held in considering the RSA motion. When describing the section 363(b) part of the Motion that is now under review, the Bankruptcy Court stated, "[E]ven if [section] 363(b) is the appropriate standard, I am required to determine whether the debtor is properly exercising its business judgment." *In re Boy Scouts of Am.*, 2023 WL 8449557 at *5. Second, for the reasons stated below, section 363(b) is not the appropriate standard.

"It is the cardinal canon of statutory interpretation that a court must begin with the

statutory language." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). "When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Section 363(b) is clear regarding the party that can invoke it: "[t]he trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b). Where, as here, no trustee is appointed, the chapter 11 debtor in possession assumes the trustee's section 363(b) power to administer estate property. 11 U.S.C. §§ 1106(a) & 1107(a).

The Supreme Court has held that when a Bankruptcy Code provision specifies that a "trustee may" take a particular action, only the trustee (or a debtor in possession) may do so. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6-7 & n.3 (2000) (analyzing 11 U.S.C. § 506(c)). In analyzing the same terms—"the trustee may"— in a different Bankruptcy Code provision, the Supreme Court expressly held that the authority to act under such a statute can only be invoked by a trustee or debtor in possession. *Union Planters Bank*, 530 U.S. at 6-7 ("'Where a statute . . . names the parties granted [the] right to invoke its provisions, . . . such parties only may act.'") (quoting 2A N. Singer, Sutherland on Statutory Construction § 47.23 at 217 (5th ed. 1992)) (alterations in original); *id.* at 6 n.3. The Supreme Court contrasted that statute with section 503(b)(4), which "allows 'an entity' to file a request for payment of an administrative expense." *Id.* Citing section 503(b)(4) to show that Congress knows how to make a provision broadly available, the Supreme Court held that a statute that lacks such "broad phrasing" and is instead limited to the "trustee," means that only the trustee is entitled to use it. *Id.* (analyzing § 506(c)).

As section 363(b) also refers only to the "trustee," and not "a party in interest" or similarly inclusive term, the power to request court authorization to use bankruptcy estate property outside of the ordinary course of business can only be invoked by a trustee or debtor in possession.

Although the Coalition styled the Motion as a motion to approve a proposal made by the Debtors, the Bankruptcy Court properly recognized it as the Coalition's request. "Debtors did not file the Motion. Debtors did not submit an affidavit in support of the Motion. Debtors did not testify at the hearing on the Motion. Debtors' counsel did not speak in support of the Motion." *In re Boy Scouts of Am.*, 2023 WL 8449557 at *4.

The Coalition argues that the Bankruptcy Court erred because it rendered a decision regarding the applicability of section 363(b) to an ad hoc committee's professionals' fees that differed from that rendered by other courts in other cases. (*See* D.I. 10 at 2, 3, 11-12, 16, 28-29 & 39-49.) Those cases, however, were decided based upon different evidentiary records and differed procedurally in that the motions in the cited cases were brought by the debtors.

Indeed, one of the Coalition's main arguments on appeal is that the Bankruptcy Court's ruling conflicts with the decision in *In re Mallinckrodt plc,* 2022 WL 906458 (D. Del. Mar. 28, 2022). (*See* D.I. 10 at 39-43; D.I. 15 at 1.) In *Mallinckrodt*, the debtors sought authority to, among other things, enter into a fee reimbursement agreement with an ad hoc committee. Like this case, the debtors in *Mallinckrodt* offered evidence in support of their need to negotiate with an organized group that represented the tort claimants' interests. The bankruptcy court in *Mallinckrodt* concluded that "the debtors have met their burden of establishing the sound exercise of their business judgment standard under [section] 363 …" with respect to "entering into the reimbursement agreements with the [ad hoc committee's] professionals," and therefore approved the debtors' request under section 363(b). *In re Mallinckrodt plc*, No. 20-12522 (JTD), D.I. 1189 (1/19/2021 H'rg Tr. at 9:25-10:4, 11:21-12:9) (Bankr. D. Del. Jan. 19, 2021).

On appeal, this Court affirmed. The Coalition makes much of this Court's statement that "§ 503(b)'s substantial contribution standard has no role in assessing compliance with [§] 363(b)." *In re Mallinckrodt plc*, 2022 WL 906458, at *13 (D. Del. Mar. 28, 2022). But as the Coalition

itself emphasizes, "This follows from the plain language of the statutes: section 503(b) addresses a creditor's request to pay professional fees whereas section 363(b) applies to a debtor's request to use estate assets to pay professional fees." (D.I. 10 at 41-42 (emphasis omitted).) Unlike this case, it was the debtors in *Mallinckrodt* that sought authority to pay professional fees of an ad hoc committee under section 363(b). The Motion at issue here was made by the Coalition. Thus, the Bankruptcy Court properly determined that § 503(b)'s "substantial contribution" standard applied.[7]

Moreover, as the United States Trustee correctly points out, the Bankruptcy Court had an independent duty to adjudicate the Motion based on its own experience with the case and understanding of the record. *Cf. In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 843-44 (3d Cir. 1994) ("[B]ankruptcy courts have an independent duty to review fee applications even absent objections" and "must protect the estate, lest overreaching attorneys and other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."). Merely showing that the Bankruptcy Court rendered a decision different from that rendered by another court in another case is insufficient to show reversible error. *See Threadgill v. Armstrong Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("Even where the facts of a prior [] case are, for all practical purposes, the same as those presented to a different [] court in the same district . . . . [w]here [the] second judge believes that a different result may obtain, independent analysis is appropriate.").

---

[7] Additional cases cited by the Coalition in favor of its section 363(b) argument are all distinguishable; in each case it was the debtor, not a creditor or ad hoc committee, that sought to use estate funds outside of the ordinary course of business. *See In re Purdue Pharma L.P.,* No. 19-23649-RDD (Bankr. S.D.N.Y), D.I. 394 (debtors' motion to pay ad hoc committee's professional fees); *In re LTL Mgmt. LLC*, No. 23-12825-MBK (Bankr. D.N.J.), D.I. 575 (debtor's motion to enter into reimbursement agreement with ad hoc committee of supporting counsel); *In re Endo Int'l PLC*, No. 22-22549-JLG (Bankr. S.D.N.Y.), D.I. 1112 (debtor's motion to pay professional fees of steering committee for state attorneys general).

2.    **The Bankruptcy Court Properly Rejected the Coalition's Reliance on the Debtors' Prior Failed Requests**

Throughout its briefs, the Coalition argues that the Bankruptcy Court should have considered the Motion under the standards of section 363(b) because the Debtors previously sought the same relief, even though the confirmed plan did not provide for such payment. (*See* D.I. 10 at 1-4, 11-13, 15-16, 28, 39 & 43-49.) "To state the obvious," the Coalition argues, "had the Court granted the [Debtors'] motion, there would be no basis for this appeal since the Coalition would have already been paid. The Bankruptcy Court cannot avoid review of its prior ruling rejecting *Mallinckrodt* by pointing to its denial of a motion that is now subject to review." (*Id.* at 45.) "The Bankruptcy Court should have applied section 363(b)'s business judgment standard and granted the [Debtors'] motions to pay the Coalition's fees and expenses consistent with the undisputed evidence, on a prospective basis during the underlying case." (D.I. 15 at 1.)

As the Opinion notes, "the parties abandoned Debtors' request to enter into and perform under the RSA," so the "RSA does not serve as a continuing request by Debtors" to pay the Coalition's fees. *In re Boy Scouts of Am.*, 2023 WL 8449557, at *4; *see Washburn v. Boy Scouts of Am. (In re Boy Scouts of Am.)*, 2023 WL 6964724, at *4 (Bankr. D. Del. Oct. 20, 2023) (noting the RSA "dissolved by its own terms" because the parties failed to obtain an order approving it). The Bankruptcy Court also declined to consider the Coalition's fees under the proposed fifth amended plan "as part of the confirmation hearing." *In re Boy Scouts of Am.*, 2023 WL 8449557, at *4.

The Coalition's attempt to cloak itself in the Debtors' previously rejected section 363(b) requests is unavailing. The Coalition is essentially challenging whether the Bankruptcy Court should have granted the Debtors' request in the first instance. This Court does not have appellate

17

jurisdiction over such a challenge. The Coalition did not appeal the Bankruptcy Court's August 19, 2021 decision declining to allow payment of the Coalition's professionals' fees through the RSA, or its September 29, 2021 decision declining to allow the Debtors to pay those fees through the plan. While both of these rulings were interlocutory, under the "merger rule," they merged with the final judgment and "may be reviewed on appeal from the final order." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996). The September 8, 2022 order confirming the plan was just such "a final, appealable order." *In re Kaiser Aluminum Corp.*, 343 B.R. 88, 93 (D. Del. 2006); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 566 (B.A.P. 1st Cir. 2017) (interlocutory orders "became final and subject to review on appeal" of the confirmation order). The Coalition never appealed the confirmation order, and thus forfeited any appeal of the interlocutory orders that merged with it. Any appeal of the Bankruptcy Court's prior decisions denying the Debtors' requests to pay the Coalition's professional fees is thus not properly before this Court. Moreover, having already confirmed their plan of reorganization, there is no possibility for the Debtors to now enter into or perform under the RSA. The Debtors' RSA Motion is now moot and not justiciable in this appeal.

For the foregoing reasons, the Bankruptcy Court did not commit an error of law or other reversible error by holding that section 363(b) did not apply to the Coalition's request to have its professionals' fees paid from the Debtors' bankruptcy estates.

### 3. Even if Section 363(b) Were Applicable, the Bankruptcy Court Did Not Abuse its Discretion by Denying the Motion on this Record

Even if section 363(b) applied, and denial of the Debtors' prior requests was justiciable in this appeal, the Bankruptcy Court's determination that the Debtors' bankruptcy estates' funds should not be used to pay the Coalition's professionals' fees finds ample support in the record and is thus not clearly erroneous. *Fellheimer*, 57 F.3d at 1223.

A party seeking to invoke the "business judgment" standard under section 363(b) must show a "good faith effort to be informed." *In re Tower Air, Inc.*, 416 F.3d 229, 240 (3d Cir. 2005) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 958, 967 (Del. Ch. 1996)). In negotiating the RSA, however, the Debtors did not review, or even request, any documents regarding the Coalition's professionals' fees. (SA291–SA292, Tr. 173:25–174:5; SA330–SA331, Tr. 212:16–213:18; SA355, Tr. 237:18-21; SA359–SA361, Tr. 241:20–243:2.) Then, weeks later—without any evidence of due diligence—the Debtors filed an amended plan that still would have paid the Coalition's professionals' fees without first making the showing required by section 503(b)(3)(D) and (4). (B.D.I. 6212, § V.T.)

As the Bankruptcy Court noted in denying the Motion, "At the RSA hearing, I expressed multiple concerns about approving the Coalition's fees." *In re Boy Scouts of Am.*, 2023 WL 8449557, at *5. After rejecting the Debtors' attempts to pay the Coalition's professionals through the RSA and plan, "[t]hose concerns still resonate[d]" with the Bankruptcy Court, "and [were], in fact, confirmed by the submissions made on the Motion." *Id.* The Coalition has not shown that the Bankruptcy Court's rejection of those attempts was clearly erroneous. Thus, even under section 363(b), the Bankruptcy Court did not abuse its discretion by denying the Motion.

## B. The Bankruptcy Court Did Not Abuse its Discretion in Denying the Motion Under § 503(b)(3)(D) and (4)

In chapter 11 cases, other than small business cases, the United States Trustee must appoint such official committees of creditors as he deems appropriate. 11 U.S.C. § 1102(a). Once appointed, an official committee and its members "fulfill fiduciary duties to the committee's constituents," not just to the specific creditors appointed to the committee. *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 378 (3d Cir. 2022). Under § 1103(a), an official committee may employ professional persons, who may be awarded reasonable compensation under § 330(a) of the

Bankruptcy Code upon the appropriate showing.  If so awarded, the fees of an official committee's professionals are treated as an administrative expense that is paid from the bankruptcy estate before any distribution to unsecured creditors.  11 U.S.C. §§ 503(b)(2), 507(a)(2).

In contrast to an official committee, creditors and ad hoc committees—even ones that actively participate in the chapter 11 case—may obtain payment of their professionals' fees under paragraphs (b)(3)(D) and (b)(4) of section 503, which are the only Bankruptcy Code provisions that address payment of creditors' and ad hoc committees' fees and expenses.  In relevant part, those two paragraphs provide:

> [The Bankruptcy Court shall allow as an administrative expense]
>
> (b) (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>> ...
>> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
> (b)(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

Thus, the Coalition must prove that (i) it made a substantial contribution to the Debtors' chapter 11 cases (section 503(b)(3)(D)), and (ii) its professionals' requested compensation was reasonable, and their expenses were actual and necessary (section 503(b)(4)).  The Coalition bore the burden of proof.  *See In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012); *In re KiOR, Inc.*, 567 B.R. 451, 458 (D. Del. 2017).

The Bankruptcy Court found that the evidence, in the form of multiple declarations, "supports the Coalition's narrative that it was a significant player in the bankruptcy case and

worked constructively toward confirmation of a plan." *In re Boy Scouts of Am.*, 2023 WL 8449557, at *5. Those declarations "focus[ed] on the Coalition's role in settlements [between mid-August 2021 and December 2021] with several insurance companies and the Ad Hoc Committee of Local Councils" and ascribed several "key accomplishments" to the Coalition. *Id.* at *5, *10. "That the Coalition played a major and constructive role in the case is really not in dispute and is consistent with my observations of the dynamics of the case since the Coalition was formed." *Id.* at *5 Notwithstanding these observations, the Bankruptcy Court determined that the Coalition had not met its burden under section 503(b)(3)(D) and (4).

First, with respect to the substantial contribution element, the Bankruptcy Court considered multiple factors, including: whether the services were rendered solely to benefit the client or to benefit all parties in the case; whether the services provided direct, significant and demonstrable benefit to the estate; and whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys. *In re Boy Scouts of Am.*, 2023 WL 8449557, at *8. As "no party really argues that the Coalition Professional's services were not constructive or did not provide a benefit to the estate," the Bankruptcy Court noted that "the real issues are whether the services duplicated those of estate professionals and whether the services transcended self-interest." *Id.* at *9. Giving full credit to the Coalition's evidence and statements—including that "the unique circumstances of this case" required the Coalition, as "the representative voice for nearly 75% of the Survivors," "to vigorously take the laboring oar" on all of the settlements—the evidence still did not support a conclusion that the services for which the Coalition sought reimbursement did not duplicate the role that the Debtors or the TCC played in the case—entities statutorily charged with reaching resolution they believed appropriate and driving the case to a conclusion. The Bankruptcy Court further observed that:

> the Fees do not merely encompass work performed on the multiple
> settlements during the mid-August to December 2021 timeframe.
> Rather, the Fees span the period from July 21, 2020 through October
> 31, 2022 and cover work far beyond the scope of the settlements.
> The Fees include everything from case administration to the plan
> and disclosure statement, work that certainly was within the purview
> of Debtors and/or the TCC. The Coalition's "soup to nuts" approach
> to the case mirrored the work of an official committee.

*Id.*[8]

Second, with respect to its burden to show that its professionals' requested compensation was reasonable, and that the expenses were actual and necessary, the Bankruptcy Court noted the Coalition's admitted "failure to review the Verified Fee Statements to assess which services were beneficial to the estate or were at least reasonable," which "dooms its request." *Id.* at *8. Accordingly, the Bankruptcy Court denied relief under section 503(b)(3)(D) and (4).

"Whether a creditor [or ad hoc committee of creditors] has made a substantial contribution within the meaning of § 503(b)(3)(D) is a question of fact, 'and it is the bankruptcy court that is in the best position to perform the necessary fact finding task.'" *In re Tropicana*, 498 F. App'x at 152 n.3 (quoting *Lebron*, 27 F.3d at 946). The finding that an applicant has not proven it made a substantial contribution is reviewed "for clear error." *In re Am. Ctr. for Civil Justice, Inc.*, 2022 WL 17884119, at *2 (3d Cir. Dec. 23, 2022).

The Coalition argues that the Bankruptcy Court clearly erred in denying a substantial contribution award under section 503(b)(3)(D) and (4). Its contributions to the chapter 11 cases are undisputed, the Coalition argues, including that "the Coalition led the negotiation of the key sequence of settlements that unlocked over $2.4 billion in value for survivors, breaking the impasse in the case and clearing the way to a confirmable plan." (D.I. 10 at 31; *see also id.* at 31-

---

[8] The Coalition summarized the fees by month in the Motion. (A146-147). I estimate the fees for mid-August to December 2021 period as being about $7.2 million.

32 (detailing various settlements negotiated by the Coalition). "In the [Bankruptcy] Court's own words, '[w]ithout these settlements, there is no Plan.'" (D.I. 10 at 32-33 (quoting *In re Boy Scouts of Am.*, 642 B.R. at 562).) "Beyond this," the Coalition argues, "the Coalition provided other contributions, including (i) offering a single point of contact on behalf of survivors for negotiations, and (ii) securing approval of votes from a vast number of survivors for which the Coalition acted." (*Id.* at 33 n.6.) The Coalition asserts that, in considering whether its contribution transcended its self-interest, the "core" of the inquiry is whether "the applicant delivered benefits to the case or estate beyond its own interests." (*Id.* at 36 (emphasis omitted).) "The [Bankruptcy] Court ignore[d] the 'benefits' side of the standard and grapple[d] inconclusively with the extent to which the Coalition performed work on behalf of its own members." (*Id.* at 37.) "By focusing only on the ways the Coalition promoted its members' interests, and ignoring the substantial case benefits that transcended such interests—in effect, conducting a plus/minus analysis that examines only the minuses—the Court twisted the Third Circuit's legal standard beyond recognition." (*Id.*)

I disagree. The Bankruptcy Code's "substantial contribution" provisions "represent[] an accommodation between the twin objectives of encouraging meaningful creditor participation in the reorganization process and keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Lebron*, 27 F.3d at 944 (internal quotation marks and citations omitted). "As with all of the Bankruptcy Code's priority statutes, section 503(b)(3) is to be narrowly construed so that administrative expenses will be held to a minimum." *KiOR*, 567 B.R. at 458. Thus, substantial contribution awards are granted only in "rare and extraordinary circumstances." *Id.* at 459 (internal quotation marks omitted).

The substantial contribution analysis starts with the premise that ad hoc committees of creditors such as the Coalition "are presumed to be acting in their own interests until they satisfy

23

the court that their efforts have transcended self-protection." *Lebron*, 27 F.3d at 944. For that reason, "'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *Id.* "Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." *Id.* at 946. But contrary to the Coalition's argument, "the core of the 'self-interest' standard" is not whether "the applicant delivered benefits to the case or estate beyond its own interests." (D.I. 10 at 36 (emphasis omitted).) Rather, the key inquiry under *Lebron* is whether the Coalition's actions were "designed primarily" to serve the interests of the State Court Counsel and their clients or were "designed primarily" to benefit the Debtors' bankruptcy estates. *Lebron*, 27 F.3d at 944.

Even where an applicant's services "turned out to have a beneficial effect on the estates," there is no error in finding that "the action was taken largely in the self-interest of the movants and would have been taken whether there would have been estate reimbursement or not." *Tropicana*, 498 F. App'x at 152 (internal quotation marks omitted); *cf. Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 134-35 (2015) ("Congress has not granted [courts] 'roving authority . . . to allow counsel fees . . . whenever [they] might deem them warranted.'") (*quoting Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975)).

The Coalition argues that the Bankruptcy Court engaged in "a wholesale rewrite of [the Third Circuit's] standard." (D.I. 10 at 36.) I disagree. The Bankruptcy Court properly applied the standard and, based on the record before it, found that the Coalition failed to meet its burden under section 503(b)(3)(D) and (4). The record before the Bankruptcy Court included the evidence submitted by the Coalition, the responses to the Motion (including the Official Tort Committee's

counter-narrative of its role), and the Bankruptcy Court's observations of "the entire chapter 11 case."[9] (A684–A685, A690–A691.) Ultimately, the Bankruptcy Court found that the Coalition had not overcome the presumption of self-interest and that it had duplicated services that were properly the role of Debtors or the Official Tort Committee to perform. *In re Boy Scouts of Am.*, 2023 WL 8449557, at *9-11.

The Bankruptcy Court found that, notwithstanding the Coalition's "major and constructive role in the case," many of its professionals' services "supplemented or overlapped with services provided by the Debtors' professionals or duplicated services provided by the TCC's professionals[,] although the Coalition and TCC often took opposing views." *Id.* at *5, *8. Indeed, the Coalition does not so much argue that its professionals did not duplicate services for which it seeks an award as it argues that there were important services that its professionals did not duplicate. This does not meet the standard. The record supports a finding that the Coalition's professionals engaged in every aspect of the cases, duplicating the duties of an official committee.[10]

The Bankruptcy Court further found that the Coalition had not shown that its contribution "transcend[ed] its self-interest," as many of its actions "were for the benefit of" State Court Counsel, such as those regarding State Court Counsels' "individual advertising programs designed to generate clients." *Id.* at *9-10. I do not think that conclusion is clearly erroneous. While the existence of a self-interest does not in and of itself preclude reimbursement, the Coalition failed to

---

[9] The Coalition properly advised the Bankruptcy Court that it should bring its experience with the entire case in deciding the Coalition's Motion. (A625-26, Tr. 28:17-29:2.) The Motion was the 10808[th] docket item in the case. As should be self-evident in a bankruptcy as large and as complex as this one, a reviewing court cannot duplicate that experience when reviewing the record in the case.

[10] The Bankruptcy Court essentially found that the Coalition was a shadow TCC.

show that its efforts to negotiate settlements with other constituencies and move the case forward were "designed primarily" to benefit the Debtors' bankruptcy estates, or that these same efforts would not have been undertaken absent any expectation of reimbursement from the estate. *Id.* at *11. While at first glance, $21 million seems like a lot to spend absent an expectation of reimbursement, the Bankruptcy Court's analysis, *In re Boy Scouts of Am.*, 2023 WL 8449557, at *11, makes the reasonable point that $21 million was a pittance relative to the possible fees if the Coalition's efforts were successful. The Coalition represented nearly 75% of the survivors. As the Bankruptcy Court observed, "by any measure, the PI Firms [directing the Coalition] had a hefty financial incentive to participate in the BSA bankruptcy case because of their own stake in the recoveries of their clients," where "[t]ypical contingency fee arrangements are in the range of 25% to 40% of recoveries, often after expenses," and the case resulted in the "existence of a $2.4 billion trust ..." *Id.*

The Bankruptcy Court further found that, as the Coalition conceded, the Coalition "fail[ed] to review the Verified Fee Statements [filed in support of the Motion] to assess which services were beneficial to the estate[s] or were at least reasonable"—a failure that "dooms [the Coalition's] request." *Id.* at *8. The Coalition argues repeatedly that it should have been given some sort of second chance to itemize and cull its invoices, as "a requirement for itemized pre-review is nowhere found in the standard." (*See* D.I. 10 at 38.) The Coalition does not argue that it formally asked the Bankruptcy Court for a second chance. In any event, its argument does not comport with the statute, which places the burden of proof on the claimant seeking a substantial contribution award to show that the fees for which it seeks reimbursement were reasonable and benefitted the estates. The Coalition's position seems to be that the request for $21 million was merely an opening bid.

26

Finally, the Bankruptcy Court found that the Motion "runs counter to the Coalition's representations to the court, and more importantly, its promise to its members," that its professionals' fees would be paid by State Court Counsel. *In re Boy Scouts of Am.*, 2023 WL 8449557, at *10. "Here," the Bankruptcy Court found, "reimbursement of the Coalition's Fees will be borne two-thirds by the Settlement Trust and one-third by the reorganized Debtors. If the Motion is granted, members of the Coalition are paying part of the Fees." *Id.*

The Coalition argues that it made no inconsistent representations on this or any other matter. (D.I. 10 at 50). The Coalition relies on a supplement to its amended 2019 statement, in which it reserved the right to seek a "substantial contribution" claim and seek payment of its bankruptcy counsel's fees and expenses under a chapter 11 plan. (A002, ¶ 2). But this reservation of rights is contained in the same paragraph as the Coalition's representation that neither "[the Coalition] nor State Court Counsel will charge back the fees of any of the Coalition's professionals to the individual survivors in any way, including by reducing an individual survivor's claim distribution." (*Id.*)

The Coalition further argues that the Bankruptcy Court's ruling runs contrary to its prior finding that abuse claims will be paid in full under the confirmed plan. (D.I. 10 at 50 (citing *In re Boy Scouts of Am.*, 642 B.R. at 164.)) According to the Coalition, "The Bankruptcy Court and this Court found that survivors will be paid in full under the plan. And the BSA's plan provides for the payment of the Coalition's fees and expenses." (D.I. 10 at 50.) Thus, "the reversal of the Bankruptcy Court's decision does not mean that survivors will end up paying the Coalition's fees." (*Id.*) But the plan provided only that the Bankruptcy Court would consider reimbursement of the Coalition's fees and expenses under a separate and appropriate motion—that is, apart from any plan feasibility and confirmation issues. It is true that, as part of confirmation, the Bankruptcy Court found that the abuse claims would most likely fall within the range of $2.4 billion to $3.6

27

billion, and that the total funding exceeds this range. *In re Boy Scouts of Am.*, 642 B.R. at 66, 69. Notwithstanding these best estimates, taking any funds from the Settlement Trust runs at least some risk that funds will be insufficient for abuse claims, even if that is not a certainty either.

Accordingly, the Bankruptcy Court held that "[t]he Coalition ha[d] not met its burden to prove that it provided a substantial contribution to the estate[s]," and had not shown that its professionals' fees "should be paid by anyone other than" State Court Counsel. *Id.* at *11. The Coalition has failed to show that this factual determination was clearly erroneous.

IV.    **CONCLUSION**

The Coalition's disagreement with the Bankruptcy Court's decision is insufficient to obtain reversal on appeal, and it has not otherwise shown reversible error. The Bankruptcy Court acted within its discretion, and the Order should be affirmed. A separate order will be entered.